**UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF KENTUCKY
CENTRAL DIVISION
LEXINGTON**

| | |
|---|---|
| SHAUNTRELL MANUEL, )<br>)<br>  Plaintiff, )<br>)<br>v. )<br>)<br>EMT-P ANTHONY HIGGINS, et al., )<br>)<br>  Defendants. ) | NO. 5:20-CV-127-KKC-MAS |

**AMENDED REPORT & RECOMMENDATION**

Defendants Anthony Higgins, Robert Williams, Francisco Rios, and the United States (collectively, "Defendants") have filed a Motion for Judgment on the Pleadings or, in the alternative, a Motion for Summary Judgment. [DE 54]. Defendants argue, *inter alia*, that Plaintiff Shauntrell Manuel's ("Manuel") *Bivens* claims should be barred as untimely and his Federal Tort Claims Act claim lacks relevant expert proof. Manuel, proceeding *pro se*, responds detailing his injury, but he does not address the legal issues raised by Defendants. [DE 60]. Having carefully reviewed the motion, the record before the Court, and giving full deference to Manuel, the Court recommends granting the motion.

**I.   RELEVANT BACKGROUND**

**A.   ALLEGED INJURY**

Per the Complaint [DE 1] and Amended Complaint [DE 17] in this matter, Manuel complains about certain medical treatment he received from Defendants

while incarcerated at the Federal Medical Center in Lexington, Kentucky ("FMC Lexington").

Namely, in and around September 11, 2017, Manuel went to FMC Lexington's medical staff with a complaint that resulted in a diagnosis of a staph or bacterial infection. Manuel warned Defendants that any medication they might prescribe could not contain sulfur due to a pre-existing allergy. Defendants, however, allegedly prescribed medication that did, in fact, contain sulfur. Per Manuel, he began to have an allergic reaction within minutes of receiving the first dose on September 13, 2017. Defendants reacted and began treating Manuel with Benadryl in the hopes of reducing Manuel's symptoms. Manuel was soon after transferred from FMC Lexington to the Federal Transfer Center in Oklahoma ("FTC Oklahoma") and then on to the Federal Correction Institution in McDowell, West Virginia ("FCI McDowell").

Based upon these actions, Manuel asserts claims under both Bivens and the Federal Torts Claims Act ("FTCA").

## II.   ANALYSIS

### A.   LEGAL STANDARD

"After the pleadings are closed ... a party may move for judgment on the pleadings." FED. R. CIV. P. 12(c). The Court reviews a motion for judgment on the pleadings under the same standard as a motion to dismiss under Federal Rule of Civil Procedure 12(b)(6). *Jackson v. City of Cleveland*, 925 F.3d 793, 806 (6th Cir. 2019). Thus, the Court must determine whether the complaint alleges "sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'"

*Ashcroft v. Iqbal*, 556 U.S. 662, 678, 129 S.Ct. 1937, 173 L.Ed.2d 868 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570, 127 S.Ct. 1955, 167 L.Ed.2d 929 (2007)). The plausibility standard is met "when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* (citing *Twombly*, 550 U.S. at 556, 127 S.Ct. 1955).

Defendants also move for summary judgment against Manuel's claims as an alternative remedy. Defendants cite to many facts they gathered during discovery in support of their various arguments. As a result, the Court may treat Defendants' motion for judgment on the pleadings as a motion for summary judgment under FED. R. CIV. P. 56. FED. R. CIV. P. 12(c). *See Mar Arnold & Sons, LLC v. W.L. Hailey & Co., Inc.*, 452 F.3d 494, 503 (6th Cir. 2006) ("This Court has found that the mere presentation of evidence outside of the pleadings, absent the district court's rejection of such evidence, is sufficient to trigger the conversion of a Rule 12(c) motion to a motion for summary judgment.").

A motion under Rule 56 challenges the viability of another party's claim by asserting that at least one essential element of that claim is not supported by legally sufficient evidence. FED. R. CIV. P. 56(a); *Celotex Corp. v. Catrett*, 477 U.S. 317, 324-25 (1986). A party moving for summary judgment must establish that, even viewing the record in the light most favorable to the nonmovant, there is no genuine dispute as to any material fact and that the party is entitled to a judgment as a matter of law. *Loyd v. St. Joseph Mercy Oakland*, 766 F.3d 580, 588 (6th Cir. 2014). The burden then shifts to the nonmoving party to "come forward with some probative evidence to

support its claim." *Lansing Dairy, Inc. v. Espy*, 39 F.3d 1339, 1347 (6th Cir. 1994). To defeat a properly supported motion for summary judgment, the party opposing it may not "rest upon mere allegation or denials of his pleading," but must present affirmative evidence supporting his claims. *See Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 256-57 (1986). If the responding party's allegations are so clearly contradicted by the record such that no reasonable jury could adopt them, the court need not accept them when determining whether summary judgment is warranted. *Scott v. Harris*, 550 U.S. 372, 380 (2007).

### B.  TIMELINESS OF *BIVENS* CLAIM

Before the Court can even turns to Defendants' substantive arguments, the Court must first address the statute of limitations argument. Previously, Defendants moved to dismiss this case based upon this argument. At that time, the Court denied that request due to a clouded timeline.

> The Court … cannot resolve the Defendants' timeliness argument at this time. That is because the one-year limitations period would have been tolled while Manuel exhausted his administrative remedies under the Bureau of Prisons' (BOP's) Inmate Grievance Program, *see Brown v. Morgan*, 209 F.3d 595, 596 (6th Cir. 2000), and, on the present record, the Court cannot determine precisely when Manuel was engaged in that process.

[DE 27, Page ID# 190]. Since that time the Defendants have conducted discovery to clarify the issue. The resulting efforts have proven the merits of their argument.

### 1.  **Legal Framework**

Manuel's claims against the Defendants are brought pursuant to *Bivens v. Six Unknown Federal Narcotics Agents*, 403 U.S. 388 (1971), which held that an individual may "recover money damages for any injuries ... suffered as a result of

[federal] agents' violation of his constitutional rights." *Id.* at 397. Because the remedy afforded in a *Bivens* action is entirely judge-made, there is no statutory limitations period. Instead, federal courts apply the most analogous statute of limitations from the state where the events occurred. *Johnson v. Memphis Light Gas & Water Div.*, 777 F.3d 838, 843 (6th Cir. 2015).

For Kentucky, the Court turns to its one-year statute of limitations for asserting personal injuries. KY. REV. STAT. § 413.140(1)(a); *Hornback v. Lexington-Fayette Urban Cty. Gov't*, 543 F. App'x 499, 501 (6th Cir. 2013); *Mitchell v. Chapman*, 343 F.3d 811, 825 (6th Cir. 2003) ("*Bivens* claims have a one-year statute of limitations under Kentucky law."). Consequently, to be timely, Manuel must have filed his Complaint in this action no more than 365 days after those claims accrued.

However, Manuel's statute of limitations can be tolled. The statute of limitations is tolled while an inmate actively exhausts "such administrative remedies as are available." *Brown v. Morgan*, 209 F.3d 595, 596 (6th Cir. 2000). Once the exhaustion process is complete with respect to a particular claim, the statute of limitations once more begins to run.

### 2. **BOP Administrative Remedies**

The federal Bureau of Prisons' ("BOP") Inmate Grievance System requires a federal inmate to first seek informal resolution of any issue with staff. 28 C.F.R. § 542.13. The informal grievance is generally referred to as a BP-8 Form. If a matter cannot be resolved informally, the inmate must file an Administrative Remedy Request Form (BP-9 Form) with the Warden within 20 calendar days following the date on which the basis for the Request occurred, unless an extension is allowed

because the inmate demonstrates a valid reason for delay. 28 C.F.R. §§ 542.14(a), (b). The inmate's BP-9 Form should be limited to "a single complaint or a reasonable number of closely related issues." 28 C.F.R. §542.14(c)(2). The Warden has 20 days to respond to the inmate's BP-9 Form. 28 C.F.R. § 542.18.

If an inmate is not satisfied with the Warden's response, he may use a BP-10 Form to appeal to the applicable Regional Director, who has 30 days to respond. *See* 28 C.F.R. §§ 542.15 and 542.18. And if not satisfied with the Regional Director's response, he may use a BP-11 Form to appeal to the General Counsel, who has 40 days to respond. *See* 28 C.F.R. §§ 542.15 and 542.18. *See also* BOP Program Statement 1300.16. At any level, "[i]f the inmate does not receive a response within the time allotted for reply, including extension, the inmate may consider the absence of a response to be a denial at that level." 28 C.F.R. § 542.18. Because "[p]roper exhaustion demands compliance with an agency's deadlines and other critical procedural rules...," *Woodford v. Ngo*, 548 U.S. 81, 90 (2006), the inmate must file the initial grievance and any appeals within these time frames and in accordance with these rules.

### 3. Manuel's Pursuit of His Claim

Following his injury on September 13, 2017, Manuel filed a BP-8 Form following his arrival at FTC Oklahoma on September 28, 2017. [DE 54-2, Page ID# 321].

Manuel was then transferred to FCI McDowell where there is no indication that Manuel took any specific steps to pursue the BP-8 Form. Rather, Manuel next inquired about the submitted BP-8 Form in or around February 2018. Per Manuel,

because nobody knew about his prior BP-8 Form, he re-submitted it at FCI McDowell in February 2018, although no specific date is provided. [DE 54-2, Page ID# 321]. When he did not get a response, he submitted a BP-9 Form on March 6, 2018. [DE 54-2, Page ID# 322]. Manuel, never receiving a response to the BP-9 submission, submitted several more BP-9 Forms as well as a BP-10 Form. [DE 54-2, Page ID# 322]. He eventually received a response from the BP-9 Form in January 2019 and a response on his BP-10 Form on June 17, 2019. [DE 54-2, Page ID# 322].

Manuel then filed this action on March 22, 2020, exactly 279 days after receipt of his ruling on his BP-10 Form. [DE 1].

### 4. Application to Manuel's Claims

Although Manuel's statute of limitations may be tolled by his pursuit of his administrative remedies, "[t]he time is only tolled while the inmate **diligently** pursues his administrative claim." *Smith v. United States*, No. 09-cv-314-GFVT, 2011 WL 4591971, at *6 (E.D. Ky. Sept. 30, 2011) (emphasis added); *see also Gray v. United States*, 556 F. Supp. 3d 832, 854-55 (W.D. Tenn. 2021). All parties agree the statute limitation on Manuel's claims were tolled while he pursued his administrative remedies from March 6, 2018, through June 17, 2019. All parties also agrees that Manuel exhausted 279 days of his 365-day statute of limitation period between the conclusion of his administrative remedies and filing this lawsuit leaving him 86 days. Thus, the issue raised by Defendants is whether the statute of limitations also tolled, in whole or in part, from the date of Manuel's injury on September 13, 2017, until March 6, 2018. Stated as a question, did Manuel fail to diligently pursue his

administrative remedies for more than 86 days between September 13, 2017, until March 6, 2018?

Initially, within fifteen days of his alleged injury, Manuel filed a BP-8 Form while housed at FTC Oklahoma on September 28, 2017. Thus, because Manuel was pursuing his claims in those days, the Court will toll his statute of limitations during those fifteen days. Having not heard back on his BP-8 Form, per 28 C.F.R. § 542.14(a), Manuel had to file a BP-9 Form twenty days later. Stated another way, Manuel could be construed as pursuing his BP-8 Form during the 20-day period while he was awaiting a response. The Court will also toll his time during this 20-day period or through October 18, 2017. Together, the Court has tolled 35 days. The issue now changes to examining the period from October 18, 2017, through March 6, 2018.

After October 18, 2017, Manuel took no action to actively and diligently pursue his administrative remedies. The record is devoid of any evidence to suggest during this time that Manuel is actively or diligently pursuing his *Bivens* claim. *Cuco v. Federal Medical Center*, No. 05-cv-232-KSF, 2006 WL 1635668 (E.D. Ky. June 9, 2006), aff'd, 2007 WL 4437958 (6th Cir. 2007).

Thus, the must answer the question of when does Manuel once again pursue his administrative remedies. Defendants would argue that Manual takes appropriate steps when he files his BP-9 Form on March 6, 2018. The record, however, would suggest something different. Per Manuel, he inquired with his counselor at FCI McDowell about his prior BP-8 Form. When the counselor expressed no knowledge

of any such filing, the counselor "gave me another BP-8 which I never heard anything on. So in [*sic*] March 6, 2018 I gave the counselor a [BP-9 Form]." [DE 22, Page ID# 161]. The Court does not construe Manuel's efforts in merely asking his counselor about the prior BP-8 Form as actively or diligently pursuing his *Bivens* claim. Yet, the testimony suggests that Manuel did file a **second** BP-8 Form sometime in February 2018. The Court, however, does construe Manuel's filing this **second** BP-8 Form as actively or diligently pursuing his administrative remedies. In fact, Manuel's decision to re-file his BP-8 Form at FCI McDowell is a strong indicator that Manuel had abandoned his prior BP-8 Form submission from FTC Oklahoma further supporting the Court's conclusion that Manuel had not diligently pursued his administrative remedies in the interim. Giving full deference to Manuel with recognition of the practical unlikelihood of this scenario, the Court will assume he spoke with his counselor about the FTC Oklahoma BP-8 Form, received a new BP-8 Form, completed that form, and resubmitted that form to his counselor all on February 1, 2018. Thus, the Court will toll Manuel's statute of limitations from February 1, 2018, through June 17, 2019. Or stated another way, the Court does not toll Manuel's statute limitations period from October 18, 2017, through February 1, 2018, a total of 106 days.

When the Court couples the time where Manuel was not actively and diligently pursuing his administrative remedies (106 days) with the time following the exhaustion of Manuel's administrative remedies before he filed this lawsuit (279 days), the Court holds that Manuel filed this suit 385 days or 20 days past the statute

of limitations. Accordingly, as a matter of law, the Court finds that Manuel's claims against all Defendants are barred by the relevant statute of limitations. The Court need not consider Defendants' arguments against the merits of Manuel's claims.

C. **EXPERT PROOF FOR FTCA CLAIMS**

The same conduct at issue in Manuel's Bivens claim also serves as the basis for his FTCA claims; namely, that Defendants provided medication causing an allergic reaction and that Defendants failed to fully and properly treat that allergic reaction. The FTCA, subject to exceptions, waives the sovereign immunity of the United States government and confers subject matter jurisdiction on the federal district courts to hear tort actions against the federal government for the negligence of its employees. In relevant part, the FTCA authorizes suits against the government to recover damages:

> for injury or loss of property, or personal injury or death caused by the negligent or wrongful act or omission of any employee of the Government while acting within the scope of his office or employment, under circumstances where the United States, if a private person, would be liable to the claimant in accordance with the law of the place where the act or omission occurred.

28 U.S.C. § 1346(b)(1).

"As a general rule, domestic liability on the part of the federal government under the Federal Tort Claims Act is determined in accordance with the law of the state where the event giving rise to liability occurred. 28 U.S.C. §§ 1346(b) § 2674; *Friedman v. United States*, 927 F.2d 259, 261 (6th Cir. 1991)...." *Young v. United States*, 71 F.3d 1238, 1242 (6th Cir. 1995). This extends to claims of medical malpractice. *See Vance v. United States*, 90 F.3d 1145, 1148 (6th Cir. 1996); *Sellers*

*v. United States*, 870 F.2d 1098, 1101 (6th Cir. 1989); *Federal Deposit Ins. Corp. v. Meyer*, 510 U.S. 471, 478, 114 S.Ct. 996, 127 L.Ed.2d 308 (1994) (holding that in a FTCA action, it is the law of the state where the events occurred that controls).

As the complained-of events in this case took place in Kentucky, the Court returns to Kentucky law once more. In Kentucky, a *prima facie* case of medical negligence must include proof of the following elements: (1) a duty of care; (2) breach of that duty; (3) actual injury, and (4) the injury was proximately caused by the negligence. *Mullins v. Commonwealth Life Ins. Co.*, 839 S.W.2d 245 (Ky. 1997). Expert testimony is generally required to show that a medical provider failed to conform to the applicable standard of care and caused the plaintiff's alleged injury. *See Vance by and through Hammons v. United States*, 90 F.3d 1145, 1148 (6th Cir. 1996) (citing *Perkins v. Hausladen*, 828 S.W.2d 652, 655–56 (Ky.1992)); *Jarboe v. Harking*, 397 S.W.2d 775, 777–78 (Ky. 1965).

"To survive a motion for summary judgment in a medical malpractice case in which a medical expert is required, the plaintiff must produce expert evidence or summary judgment is proper." *Andrew v. Begley*, 203 S.W.3d 165, 170 (Ky. Ct. App. 2006). However,

> Kentucky consistently recognizes two exceptions to the expert witness rule in medical malpractices cases.... Both exceptions involve the application of the res ipsa loquitur doctrine and permit the inference of negligence even in the absence of expert testimony.... One exception involves a situation in which any layman is competent to pass judgment and conclude from common experience that such things do not happen if there has been proper skill and care; illustrated by cases where the surgeon leaves a foreign object in the body or removes or injures an inappropriate part of the anatomy. The second occurs when medical experts may provide a sufficient foundation for *res ipsa loquitur* on more

> complex matters.... An example of the second exception would be the case in which the defendant doctor makes admissions of a technical character from which one could infer that he or she acted negligently.

*Id.* at 170-71 (internal quotation marks omitted). "Medical malpractice cases can therefore be divided into two categories: cases where the parties do not dispute the need for expert testimony, which encompass the vast majority of medical malpractice claims, and cases where the plaintiff disputes the need for expert testimony because he contends one of the narrow exceptions applies." *Blankenship v. Collier*, 302 S.W.3d 665, 670 (Ky. 2010). The "much more common" category of cases is the one where "expert testimony is essential." *Id.* at 671.

Neither narrow exception applies here. For the first exception, a layperson cannot discern the causality between Manuel's supposed allergies and the alleged allergic reaction nor can a layperson opine on the proper modality of treatment for Manuel's allergic reaction (whether the treatment provided by Defendants was adequate). Without some medical proof, the Court is left guessing whether Manuel has the cited allergy, whether the blisters and hives on his body were caused by that allergy or by some other medical issue, and whether there was a better form of treatment for the allergy. The second exception is "when medical experts may provide a sufficient foundation for *res ipsa loquitur* on more complex matters[.]" *Andrew*, 203 S.W.3d at 170 (internal quotation marks removed). When "no medical testimony [i]s taken, the second exception does not apply[.]" *Green v. Owensboro Med. Health Sys., Inc.*, 231 S.W.3d 781, 784 (Ky. Ct. App. 2007). For example, "the defendant doctor makes admissions of a technical character from which one could infer that he or she

acted negligently." *Andrew*, 203 S.W.3d at 171. Here, Robinson makes no such claim nor presents evidence of any such claim.

In the end, Robinson's claims fall squarely within the recognized Kentucky scope of cases requiring expert proof. His failure to provide expert proof at the summary judgment stage is fatal to his FTCA claims.

## III.   CONCLUSION

For the reasons set forth above, the Court **RECOMMENDS** that the Court **GRANT** Defendants' Motion for Judgment on the Pleadings or, in the alternative, a Motion for Summary Judgment [DE 54].

The Court directs the parties to 28 U.S.C. § 636(b)(1) for appeal rights concerning this recommendation, issued under subsection (B) of said statute. As defined by § 636(b) (1), Fed. R. Civ. P. 72(b), Fed. R. Civ. P. 72(b), and local rule, within **fourteen days** after being served with a copy of this recommended decision, any party may serve and file written objections to any or all portions for consideration, de novo, by the District Court.

Entered this 16th day of August, 2023

MATTHEW A. STINNETT
UNITED STATES MAGISTRATE JUDGE
EASTERN DISTRICT OF KENTUCKY